[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 5, 2006
THOMAS K. KAHN
CLERK

No. 05-13245
Non-Argument Calendar

_____

D. C. Docket No. 04-02653-CV-S-NE

JOE D. HOLT,

Plaintiff-Appellant,

versus

MIKE BLAKLEY,
STANLEY MCNATT,
RANDY KING,
MARTY BURROWS,
BRAD CURNUTT,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(January 5, 2006)**

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Joe Holt, proceeding pro se, appeals the district court's grant of summary

judgment for the defendants in his § 1983 civil rights action.

## I. Background

Holt filed a pro se civil rights complaint against Limestone County,

Alabama Sheriff Mike Blakley and Officers Randy King, Stanley McNatt, and

Brad Curnutt[1] (collectively, "the defendants" or "the appellees"), alleging that the

defendants violated his civil rights by searching his property without search

warrants, failing to notify him before the search, unlawfully seizing his property,

and slandering his name in the media.  According to Holt, while he was

incarcerated in the Limestone County jail, the defendants removed his keys from

the property room without his permission and searched his property.  He alleged

that he suffered destruction of personal property, mental anguish, loss of his

employment, and public ridicule, and he requested $5.5 million in damages.[2]

Beginning in early 2003, Limestone County police received numerous

_____

[1] Holt initially named Marty Burrows as a defendant, but he later moved to dismiss
Burrows from the suit.

[2] Holt later moved to amend his complaint to add a claim for wrongful incarceration.  The
court denied the motion, noting that Holt could not challenge his arrest and detention under §
1983 in light of Heck v. Humphrey, 512 U.S. 477 (1994).  It is unclear whether Holt challenges
the district court's conclusion, but we agree that the district court properly denied the motion.

complaints from residents about missing property. The police conducted an investigation for more than one year, and in July 2004, they learned that Holt was acting as a "fence" in a stolen property ring. When the police arrived at Holt's residence on July 20, 2004, he admitted to having several items for which the police were looking, but he stated that someone left them there without his knowledge. The police then arrested Holt on several counts of receiving stolen property.

While Holt was incarcerated on the initial charges, the police obtained several valid warrants to search homes and storage spaces that Holt owned or rented and that the police had probable cause to believe contained stolen property. As part of the search of his primary residence, the police used keys that were among the personal items that Holt turned over when he was initially incarcerated. When the police found stolen property in all the locations, Holt was charged with additional crimes. The police notified Holt before the searches, and they provided him with copies of the search warrants after the searches. Several local newspapers reported on the arrest and additional investigation into Holt's involvement in the stolen property ring.

In response to Holt's complaint, the defendants submitted their special report explaining, inter alia, that the Eleventh Amendment barred claims against them in

3

their official capacities and that they were entitled to qualified immunity for the claims against them in their individual capacities. The defendants also attached several affidavits to the report in which Blakley explained the training that officers received in obtaining and executing search warrants and in which Curnett, King, and Camp explained the bases for seeking the search warrants for Holt's property and the results of the searches. They also attached numerous documents pertaining to the investigation, including copies of the search warrants, stolen property reports and matching case reports, witnesses' statements, police investigative statements, lists of inventories of the property seized, and criminal complaints for receipt of stolen property. Furthermore, they also attached property records from the jail, which Holt initialed, that noted that police opened Holt's property to obtain the keys.

The court construed the special report as a motion for summary judgment and notified Holt that he must submit evidence to support his claims. Holt reiterated the allegations from his complaint and supported his allegations with his own unsworn and unnotarized statements, a video tape of his arrest, and a copy of a letter from his employer explaining that he was being terminated because of his absenteeism.

The magistrate judge recommended granting summary judgment because

Holt's claims were frivolous, as police informed Holt of the search, the police obtained warrants supported by probable cause, Holt signed the release form permitting police to use his keys, and Holt lacked evidence to support his defamation claim. The district court adopted the recommendation over Holt's objections and granted summary judgment.

## II. Standard of Review

We review a district court's grant of summary judgment <u>de novo</u>, viewing the evidence in the light most favorable to the non-moving party. <u>Skrtich v. Thorton</u>, 280 F.3d 1295, 1299 (11th Cir. 2002). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis of its motions, and identifying those portions of the pleadings, depositions, and answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the party seeking summary judgment meets its burden, the burden shifts to the non-moving party to submit evidence to

rebut the showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

### III. Discussion

Here, the defendants met their initial burden to show the absence of a genuine issue of material fact by submitting affidavits discussing the bases for obtaining the search warrants, copies of the search warrants, property records showing that Holt authorized the police to use his keys, and additional information showing that they informed Holt prior to the search and provided copies of search warrants after the search and that Holt's allegations of slander were baseless. When the burden shifted to Holt to show a genuine issue of material fact, he failed to rebut the defendants' showing. Rule 56(e) requires that the non-moving party go beyond his own pleadings, but Holt primarily supported his opposition through his own pleadings and his unsworn and unnotarized statement that merely

6

reiterated the allegations of his initial complaint. To the extent that he relied on other information to meet his burden, that information also did not show a genuine issue of material fact.

The district court properly granted summary judgment in the defendants' favor. Therefore, we **AFFIRM.**